Cite as 2024 Ark. App. 77

# ARKANSAS COURT OF APPEALS
## DIVISION IV
No. CV-22-730

|  |  |
|---|---|
| ROBBIE ZARAGOZA<br><br>APPELLANT<br><br><br>V.<br><br><br><br>SUSAN AND SAM MCDONALD<br>APPELLEES | Opinion Delivered February 7, 2024<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[NO. 04DR-20-1128]<br><br><br>HONORABLE XOLLIE DUNCAN, JUDGE<br><br>AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

Robbie Zaragoza appeals the Benton County Circuit Court order finding her in contempt and denying her petition to terminate Susan and Sam McDonald's (the McDonalds) grandparent visitation with Robbie's minor child (MC). On appeal, Robbie argues that the circuit court erred by awarding grandparent visitation because the court lacked subject-matter jurisdiction, the McDonalds failed to rebut the statutory presumption that her decision to deny visitation was in MC's best interest, and the McDonalds' visitation interfered with her parental relationship. Robbie additionally argues that the circuit court erred by finding her in contempt and ordering her to pay attorney's fees. We affirm.

Robbie Zaragoza is MC's mother, and James McDonald was ultimately adjudicated to be MC's father. MC was born in 2013, and Robbie and James never married. James's parents are the McDonalds.

On July 21, 2020, the McDonalds petitioned the Benton County Circuit Court for grandparent visitation with MC. They stated that paternity of MC had not been established by any court, but they had a significant relationship with MC and had enjoyed frequent and regular contact with him for at least twelve consecutive months. They further stated that visitation was in MC's best interest.[1]

On August 26, Robbie responded pro se and raised safety concerns. Specifically, she stated that MC was not safe with the McDonalds because their daughter, Ann Hanson, had been criminally charged with possession of methamphetamine and cocaine in October 2019.

On September 1, the court held a hearing. Robbie appeared pro se, and the McDonalds were represented by counsel. Susan testified that since MC's birth, he had visited them every Saturday except for a nine-month period in 2015 and 2016 when they stayed in California. She further testified that from September 2019 through March 2020, MC visited them every Friday through Sunday.

Susan explained, however, that on March 15, 2020, Robbie began denying them visitation with MC, and she stated that they had not seen MC since that day, despite their requests to Robbie. Susan discussed an incident in March 2020 wherein the police came to her home looking for MC. She stated that MC was with her daughter, Ann. Robbie testified

---

[1]As discussed more fully below, under Arkansas Code Annotated section 9-13-103(b)(3) (Repl. 2020), a finding of paternity by a court of competent jurisdiction is required before a grandparent-visitation petition may be maintained. Whether the petitioner has a significant or viable relationship with the child is relevant to whether the petitioner has overcome the presumption that the parent's decision to limit or deny visitation is in the child's best interest. Ark. Code Ann. § 9-13-103(c).

that she had concerns with the McDonalds' allowing MC to have contact with Ann due to Ann's criminal charges.

At the conclusion of the hearing, the court awarded the McDonalds one weekend visitation a month for two months increasing to two weekends a month. The McDonalds' counsel informed the court that "there is no Paternity Order or action in place. So there is no Court-ordered visitation, at this point, for . . . James." The court responded that "if [James] establishes it then and gets some visitation . . . then this visitation will have to be modified."

On September 3, the court entered a temporary order awarding the McDonalds weekend visitation from September 2020 through December 2020. The court additionally ordered that MC not have contact with the McDonalds' daughter, Ann.

On November 10, the court held a final hearing on the McDonalds' petition. Robbie appeared pro se. At the beginning of the hearing, the McDonalds again informed the court that James's paternity had not been established and that James did not exercise regular visitation. They argued that if James were to establish paternity, his "legal relationship with [MC] . . . would be, you know, subject to [their] visitation."

Robbie acknowledged that James did not have "court-ordered visitation," but she stated that James could see MC "whenever he wants." Robbie also stated that James had signed a paternity acknowledgement.

Following the hearing, the court entered a final order on November 12 awarding the McDonalds visitation with MC beginning in January 2021. Specifically, the court awarded

the McDonalds weekend visitation the first and third weekends in even months and the second weekend in odd months. The court additionally awarded the McDonalds ten days' visitation in July and holiday visitation on December 28 and 29. The final order again prohibited contact with Ann.

On December 9, 2021, the McDonalds petitioned for contempt against Robbie. They asserted that on December 3, Robbie refused their visitation with MC and then provided them with a November 8 order from the Washington County Circuit Court. The McDonalds asked the court to order Robbie to resume visitation and for attorney's fees and costs.

On January 6, 2022, Robbie responded to the contempt petition through an attorney, James Evans. She denied that the Benton County Circuit Court had subject-matter jurisdiction because she and MC resided in Washington County. She further explained that the Washington County Circuit Court entered an order awarding James visitation with MC in a paternity action filed by James.

On February 9, the court held a hearing. Susan testified that she and Sam last visited MC on November 14, 2021. She explained that they tried to pick him up on December 3, 2021, but Robbie disallowed the visit. She further stated that she asked Robbie to see MC for their two-day visit in December, but Robbie stated that MC was visiting James. Susan additionally explained that James lives in Missouri and that she had not spoken to him in two years.

4

Sam testified that he spoke with Robbie when they tried to pick up MC on December 3. He explained that Robbie gave him "official papers" establishing James's visitations rights and that Robbie informed him that they (the McDonalds) no longer had visitation rights.

Robbie introduced a Washington County Circuit Court order dated November 8, 2021. In the order, the court noted that James had counsel, but Robbie did not. The court also stated that the parties had reached a settlement agreement, and it declared James to be MC's father. It ordered that Robbie retain primary custody of MC subject to James's visitation. The attached visitation schedule provided that James have weekend visitation on the first, third, and fifth weekends of every month from Friday after school through Monday morning, and it also awarded him a mid-week visitation one evening a week. The visitation schedule further provided that James have summer visitations from June 15 through June 30 and July 7 through July 22 as well as half of MC's school vacation in December during even years.[2]

Robbie testified that James initiated the Washington County proceedings and that she approved and signed the Washington County order establishing James as MC's father. She stated, however, that she did not appear in court. She explained that she agreed only to James's paternity, but she did not know how the court would determine James's visitation. She testified that she followed the Washington County order, and she admitted that she

_____

[2]The schedule specifically provided that in December during even-numbered years, James shall have MC "[c]ommencing at 10:00 a.m. on the day marking the halfway point of the school vacation and continuing until 6:00 p.m. the day before school resumes."

waited until the McDonalds tried to retrieve MC for visitation to notify them of the conflicting order.

On being questioned by the court, Robbie explained that her current attorney, James Evans, represented James McDonald in the paternity action in Washington County. She stated that she informed Evans about the Benton County order concerning the McDonalds' visitation during the Washington County proceedings.

In closing statements, Evans stated, "I've never spoken to [Robbie] until she got sued this second time." He further explained that James's visitation from Washington County directly conflicts with the McDonalds' visitation. He argued that the parties needed to "go back into Washington County . . . to get that visitation changed where it's not interfering with the other Orders."

The circuit court then stated that

[Robbie] knew exactly what this Court said when she agreed to the Court Order that you got on behalf of [James], in November, a year after this Court had already ordered in 2020. And, she knew that she was going to be usurping the Benton County Court Order—she thought she would get by with it that way—and I firmly believe that it was a set up aimed to do exactly that. . . . I think we can just work around [the Washington County] Order.

The court took the McDonalds' attorney's-fees motion under advisement.

On February 14, the Benton County Circuit Court entered a temporary order modifying the McDonalds' visitation schedule. The court ordered that the McDonalds have weekend visitation the second weekend of odd months and the second and fourth weekend

6

of even months.[3] The court also ordered that the McDonalds have visitation for nine days starting the fourth Friday in July. The court noted that if James's visitation occurred during that time, the McDonalds' visitation "shall take place immediately following [James's] July visitation period."

Following the temporary hearing, on July 14, Robbie amended her answer and counterclaimed to terminate grandparent visitation. She stated that the Benton County Circuit Court had "subject matter and personal jurisdiction of this matter because [Robbie] although a resident of Washington County, Arkansas did not question the venue in the original action where she appeared, pro se." She, however, asserted that the McDonalds' visitation should be terminated because, given James's visitation, she would see MC only on weekdays. Robbie additionally asserted that the McDonalds' visitation should be terminated because MC is no longer an illegitimate child, the visitation is not in MC's best interest, and the visitation order did not state "all factors considered."

On July 26, the court held a hearing. At the hearing, Susan testified that since the February 9 hearing, she and Sam had exercised their weekend visitations with MC in February, March, April, and May but that Robbie disallowed their visitation in June and July as well as their nine-day summer visitation. Sam testified that when he tried to pick up MC for visitation in June, Robbie told him that MC was visiting James.

---

[3]Specifically, the weekend visitation began on Friday at 6:00 p.m. and concluded on Sunday at 6:00 p.m.

Robbie testified that MC was with James for summer vacation when the McDonalds tried to pick him up for their visitation in June and July. She acknowledged that the Washington County order did not specifically provide for James's visitation at that time, but she noted that the order permitted them to agree to additional visitation. Robbie further clarified that MC had been in James's custody since school released for summer vacation.

At the conclusion of the hearing, the court stated,

First of all, the rebuttable presumption has been overcome almost two years ago, in November, of 2020, by a preponderance of the evidence when this Court ordered visitation. Almost two years ago. We're coming up on two years that this Court Order has been in place. The best interest of the child was considered and determined November, of 2020, and grandparent visitation was established. [Robbie] is in willful contempt of Court.

On July 27, the Benton County Circuit Court entered an order finding Robbie in contempt of its November 12, 2020 order awarding the McDonalds grandparent visitation. Specifically, the court found that Robbie failed on multiple occasions to facilitate the visitation. The court sentenced Robbie to fifteen days in the Benton County jail, but the court found that Robbie may purge herself of jail time by bringing MC to the courthouse on July 28 for the McDonalds' nine-day summer visitation. The court also ordered Robbie to pay partial attorney's fees of $7500.

On August 1, the court amended its order. The court stated that Robbie had purged her contempt by compliance. The court also denied Robbie's petition to terminate the McDonalds' visitation. On August 25, Robbie appealed the August 1 order to this court.

8

On appeal, Robbie first argues that the circuit court erred by awarding the McDonalds grandparent visitation in September 2020 and November 2020 because the court lacked subject-matter jurisdiction. She argues that the circuit court lacked subject-matter jurisdiction because James's paternity had not been established by a court of competent jurisdiction. She relies on Arkansas's grandparent-visitation statute, which provides, in relevant part, that a grandparent may petition a circuit court of this state for reasonable visitation rights with respect to his or her grandchild if the child is illegitimate, the petitioner is a paternal grandparent or great-grandparent of the illegitimate child, and paternity has been established by a court of competent jurisdiction. *See* Ark. Code Ann. § 9-13-103(b)(3). She points out that during the proceedings in 2020, the parties informed the court that James's paternity had not been established by a court of competent jurisdiction.

Subject-matter jurisdiction is a court's authority to hear and decide a particular type of case. *Horton v. Freeman*, 2014 Ark. App. 166, 433 S.W.3d 280. A court lacks subject-matter jurisdiction if it cannot hear a matter under any circumstances and is wholly incompetent to grant the relief sought. *Id.* Subject-matter jurisdiction cannot be conferred on a court by consent of the parties or by waiver. *Stan v. Vences*, 2019 Ark. App. 56, 571 S.W.3d 24. This court has made it clear that subject-matter jurisdiction is always open, cannot be waived, and can be questioned for the first time on appeal. *Id.*

In *Horton*, we held that a circuit court had subject-matter jurisdiction to hear a grandparent-visitation petition even though paternity had not been established by a court of competent jurisdiction. 2014 Ark. App. 166, 433 S.W.3d 280. We noted that the appellant

cited no authority holding the contrary, and the appellant had conceded paternity. *Id.* We find the circumstances here are like those in *Horton*. Robbie cites no authority for the proposition that an order of paternity entered before the filing of a petition for grandparent visitation is required for the circuit court to acquire subject-matter jurisdiction. Accordingly, we find no error on this point.

Robbie next argues that the circuit court erred by awarding the McDonalds visitation because they failed to rebut the statutory presumption that her decision to deny them visitation was in MC's best interest. She again cites the grandparent-visitation statute, which sets forth a rebuttable presumption that a custodian's decision denying or limiting visitation to the petitioner is in the best interest of the child. Ark. Code Ann. § 9-13-103(c)(1).

We are precluded from addressing Robbie's argument on appeal because she did not appeal the order awarding the McDonalds visitation. An order granting or denying grandparent visitation is a final order for purposes of appeal. Ark. Code Ann. § 9-13-103(f)(4). The circuit court awarded the McDonalds visitation in November 2020. However, Robbie did not appeal. Robbie appealed only the August 1, 2022 order finding her in contempt and denying her petition to terminate the visitation. Accordingly, we cannot address Robbie's arguments challenging the award of grandparent visitation. *See Reeve v. Carroll Cnty.*, 373 Ark. 584, 285 S.W.3d 242 (2008).

Robbie also claims that the circuit court erred by awarding the McDonalds visitation because it interferes with her parental relationship with MC. She cites the grandparent-visitation statute, which provides, in part, that a petitioner shall prove that awarding

grandparent visitation would not interfere with the parent-child relationship. Ark. Code Ann. § 9-13-103(e)(4). We are again precluded from addressing this argument because Robbie did not appeal the November 2020 circuit court order awarding the McDonalds visitation.

Robbie also argues that the circuit court erred by holding her in contempt because the Benton County order awarding the McDonalds visitation "should not have been entered in the first place" and is "void ab initio." She additionally claims that the Benton County order was unclear because it conflicts with the Washington County order concerning James's visitation.

In order to establish contempt, there must be willful disobedience of a valid order of a court. *Moore v. Moore*, 2023 Ark. App. 436, 675 S.W.3d 474; *Ivy v. Keith*, 351 Ark. 269, 92 S.W.3d 671 (2002). Before one can be held in contempt for violating the court's order, the order must be definite in its terms, clear as to what duties it imposes, and express in its commands. *Moore*, 2023 Ark. App. 436, 675 S.W.3d 474; *Ivy*, 351 Ark. 269, 92 S.W.3d 671. Civil contempt protects the rights of private parties by compelling compliance with court orders made for the benefit of the parties. *Omni Holding & Dev. Corp. v. 3D.S.A., Inc.*, 356 Ark. 440, 156 S.W.3d 228 (2004). Our standard of review for civil contempt is whether the findings of the circuit court are clearly against the preponderance of the evidence. *Id.*

In this case, we hold that the circuit court's finding of contempt was not clearly against the preponderance of the evidence. The circuit court found Robbie in contempt for failing to facilitate the McDonalds' visitation as required by its November 2020 order, and the

11

undisputed evidence supports the finding. Robbie admitted that she knew the Washington County order conflicted with the Benton County order, but she did not notify either court. She stated that she chose to follow the Washington County order and waited until the McDonalds attempted to exercise their visitation to inform them of the conflict. As to Robbie's argument concerning the validity of the Benton County order, when a party is held in contempt for failure to abide by a judge's order, the reviewing court will not look behind the order to determine whether it is valid. *City of Little Rock v. Cir. Ct. of Pulaski Cnty.*, 2017 Ark. 219, 521 S.W.3d 113; *Conlee v. Conlee*, 370 Ark. 89, 257 S.W.3d 543 (2007); *Carle v. Burnett*, 311 Ark. 477, 845 S.W.2d 7 (1993). Accordingly, we find no error on this point.

Robbie finally claims that the award of attorney's fees must be reversed because the court erred in finding her in contempt. Because we affirm the contempt finding, we decline to reverse the attorney's-fees award.

Affirmed.

HARRISON, C.J., and HIXSON, J., agree.

*Evans & Evans Law Firm*, by: *James E. Evans, Jr.*, for appellant.

*Tina Adcock-Thomas*, for appellees.